**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

|  |  |
|---|---|
| **ANTONIA LEROY II; ROBERT CAKORA; ANALEE PEREZ, on behalf of themselves and others similarly situated,**<br><br>        **Plaintiffs,**<br><br>    **v.**<br><br>**RedSpeed USA CORPORATION; RedSpeed GEORGIA LLC,**<br><br>        **Defendants.** | **Case No.: 1:22-cv-118-LAG**<br><br>**CLASS ACTION** |

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiffs Antonia Leroy II; Robert Cakora; and Analee Perez file this Class Action Complaint against Defendants RedSpeed USA Corporation and RedSpeed Georgia LLC (collectively "RedSpeed") on behalf of themselves and all other individuals and entities similarly situated in Georgia as set out in the putative class definition below. In support thereof, Plaintiffs state the following:

## I.        NATURE OF THE CASE

1.        Plaintiffs bring this action to challenge RedSpeed's unconstitutional, unlawful, and deeply flawed practice of privatized policing-for-profit through the installation of traffic cameras and collection of fines.

2.        RedSpeed, the wholly-owned subsidiary of a British company, is one of the largest purveyors of automated traffic enforcement systems in the United States. It manufactures, installs, and operates both the equipment necessary for municipalities to outsource traffic enforcement and the systems and platforms necessary to charge and collect the resulting fines. RedSpeed actively courts municipal employees to install such systems using the same pitch and

"statistics." It promises municipalities increased revenue through automated fines, while RedSpeed provides the "turnkey" system and in return receives as much as 35% of the revenue.

3.      Cities across Georgia, including the City of Albany, have entered into such agreements with RedSpeed and allowed the implementation of these privately owned traffic enforcement mechanisms. As a result, RedSpeed has garnered millions of dollars a year through traffic violations.

4.      This conduct is unconstitutional. The statute under which RedSpeed operates, Ga. Code Ann. § 40-14-18, violates the Georgia and United States Constitutions' due process protections as it creates a mandatory presumption that the owner of the vehicle is at fault, thus impermissibly shifting the burden of persuasion. This presumption "may"—in RedSpeed's discretion—only be overcome through the submission of a notarized statement that itself may require more expenditure than the fine charged. Further, while the statute allows a law enforcement agency to send notice of violations and collect payment, it does not allow for a third-party such as RedSpeed to supplant the actual law enforcement role, as occurs here. Finally, because the significant cost and burden of contesting the citations, which far outstrips the cost of the citation themselves, having received notice of an alleged violation from RedSpeed, Plaintiffs and putative class members do not have reasonable notice and an opportunity to be heard, and to present claims or defenses to the alleged violation. Plaintiff, and every putative class member, has been deprived of their property interests in that they paid these unconstitutional fines, and seek the return of such amounts, a declaration that § 40-14-18 is unconstitutional, and injunctive relief prohibiting the use of RedSpeed cameras.

5.      RedSpeed continues to install and operate this equipment and charge and collect fines throughout the State of Georgia. Plaintiffs and putative class members have a reasonable expectation that they will be assessed these same unconstitutional fines in the future.

6.      Further, even were RedSpeed's conduct and the statute under which it operates constitutional, it has acted deliberately and negligently resulting in its unjust enrichment at the expense of Plaintiffs and the putative class. RedSpeed operates its cameras and issues citations outside the bounds allowed by statute. The citations it sends are deceptive, appearing to be sent by law enforcement agencies and not disclosing RedSpeed's involvement. It does not calibrate equipment sufficiently often. It does not maintain records for the necessary length of time, nor allow individuals impacted by its practices access to all records. Upon information and belief, it attaches the electronic signature of a single police officer to all citations while this officer did not review each such citation. It does not endeavor to ensure that the owner of the vehicle is the driver of the vehicle and only retains pictures of license plates, not drivers. RedSpeed's deliberate actions have resulted in it wrongfully obtaining money which, in equity and good conscience, should belong to Plaintiffsand the members of the putative class.

7.      Not only is RedSpeed's conduct unlawful, it presents a prototypical situation for class treatment. RedSpeed's conduct—including all relevant practices, documents, representations, and omissions—is uniform among all class members. There is no meaningful difference among this conduct, or RedSpeed's defenses or liability, for any class member, regardless of where in Georgia they reside. The application of uniform law to a common course of conduct will determine liability for the class as a whole, ensuring that the rights of hundreds Georgia citizens are vindicated through the efficiency of a single trial.

## II.      JURISDICTION AND VENUE

8.      This Court has diversity and federal question jurisdiction over this action and venue is proper in this judicial district. RedSpeed USA Corporation is an Illinois corporation with its headquarters in Illinois. RedSpeed conducts business in Georgia (through its sham

subsidiary RedSpeed Georgia LLC (a Georgia LLC)), but maintains no office, registered agent, and or principal place of business in Georgia. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Dougherty and Lee Counties, which are in this judicial district. RedSpeed USA Corporation operates in those counties and could reasonably anticipate being subject to this Court's jurisdiction.

### III.    PARTIES

9.    Antonia Leroy II is a Georgia citizen who resides in Dougherty County, Georgia. He received a notice of violation and paid a citation or civil penalty to RedSpeed. Mr. Leroy lives in Leesburg, Georgia, and works in Albany. Nearly every day Mr. Leroy drives by RedSpeed cameras on way to work and on his way to his child's school. Mr. Leroy was issued a ticket by RedSpeed that charged him with failing to come to a complete stop before taking a right at a red light. On a separate occasion, Mr. Leroy was issued a second ticket by RedSpeed that charged him with speeding in school zone. Those charges were false and the result of RedSpeed's improper calibration or equipment. Mr. Leroy did come to a complete stop on the first occasion.    On the second occasion, Mr. Leroy was not driving by the through the school zone during school hours, the school zone speed was not active, and the school zone lights were not flashing. Mr. Leroy had to pay the first ticket in order to renew his license and did so.

10.    Robert Cakora is a Georgia citizen who resides in Lee County, Georgia. RedSpeed cameras are pervasive in Mr. Cakora's hometown (Leesburg) and he drives by them approximately every week. Mr. Cakora was issued a ticket by RedSpeed that charged him with speeding in a school zone. That charge was false and the result of RedSpeed's improper calibration or equipment. Mr. Cakora was not driving the car at the time. The person who was driving was observing the ordinary speed limit, and the school zone speed was not active at the time. Mr. Cakora cannot renew his vehicle tag until the ticket is paid, and must renew it in April

2024.

11.     Analee Perez is a Georgia citizen who resides in Albany in Dougherty County, Georgia. Nearly every day Ms. Perez drives by RedSpeed cameras between work and home. Ms. Perez was issued a ticket by RedSpeed that charged her with speeding in a school zone. That charge was false and the result of RedSpeed's improper calibration or equipment. Ms. Perez was observing the ordinary speed limit and the school zone speed was not active at the time and the school zone lights were not flashing. Approximately a month after Ms. Perez was issued a ticket, she was issued a notice stating that any subsequent ticket would be more expensive. Ms. Perez has not paid the ticket.

12.     RedSpeed USA Corporation is an corporation organized under Illinois law with its sole principal place of business in Chicago, Illinois, and therefore is a citizen of Illinois. It operates in Georgia through its subsidiary RedSpeed Georgia LLC, which is registered to do business in Georgia and is the name on the relevant contracts with government entities. RedSpeed received the revenue at issue in this case and which Plaintiffs and putative class members seek to recover. It owns the equipment and creates the policies and procedures through which these damages were created.  It lobbies municipalities, including the City of Albany, to allow it to place and operate the equipment.

## FACTUAL ALLEGATIONS

13.    RedSpeed is one of the largest sellers of automated traffic enforcement systems in the United States. It manufactures enforcement cameras and other systems which it markets and sells to municipalities. RedSpeed does through aggressive lobbying and marketing efforts, and has donated funds to the law makers who advance its interests through passing and attempting to amend the statute which purportedly authorizes this conduct.  RedSpeed markets to municipalities using largely identical or form presentations that extol the supposed virtue of outsourcing police traffic enforcement to automated "turnkey" systems owned and operated by, of course, RedSpeed. RedSpeed is not an agent of the municipalities who it contracts with to allow it to place these cameras, it represents itself in binding contracts to merely be an "independent contractor" with limited liability.

14.    RedSpeed maintains and operates all systems related to this process. This includes the equipment itself, which RedSpeed markets as involving no cost to the municipalities and which RedSpeed installs itself. These cameras capture the license plate of cars and, if the RedSpeed system determines that the car was moving in excess of ten miles-per-hour above the limit, registers a violation. Upon information and belief, the system issues citations outside the hours of operation for which they are purportedly authorized (including those posted on signs at such zones). RedSpeed only performs "preventative maintenance" once a month; and (in stark contrast to the nearly continually calibration of law enforcement owned speed detection devices) the RedSpeed equipment is only calibrated once a year. RedSpeed also owns and maintains the video footage used to assess citations, which, upon information and belief, are not fully obtainable to class members (as opposed to government records which could be obtained) and which are not retained for the full length of time necessary for those receiving citations to attempt to defend

themselves in a proceeding. The video footage provided to class members (and presumptively to law enforcement officials) does not show the driver of the vehicle.

15.     RedSpeed also owns the "citation processing system" it calls "RedCheck" which is used to assess and send the citations. Upon information and belief, this system automatically creates form notices of violations by using data obtained from the equipment installed by RedSpeed as applied to public sources of vehicle registration data. The system provides designated law enforcement officers with access to the system, with the purpose of (purportedly) reviewing the data to find that a violation has occurred.  However, the officer does not have access to the equipment or complete information (such as who was driving the vehicle) to do so; they only review the prepopulated form itself. The RedSpeed system automatically applies an electronic signature of the law enforcement officer through this process. Upon information and belief, the identical signatures of officers are applied to notifications of violations and the system is designed and implemented such that it is unlikely or impossible for the appropriate steps to be taken to ensure that violations were given only to those who actually violated the applicable law.

16.     The citations class members receive are effectively identical forms, differing only in class member specific information (such as name and address), notice specific information (notice number, PIN, etc.), and photographic information (of the vehicle and license plate). They represent that they are sent by a law enforcement agency (*e.g.* "City of Albany Public Safety Initiative") and have the general appearance of a citation from such an agency. They make no mention of RedSpeed or its role in the process, including that the money paid will be to RedSpeed or retained in part by RedSpeed.

17.     In the citation, class members are instructed to pay the penalty ($75) as well as a "e-processing fee" through a website maintained, owned, and operated by RedSpeed.  The

payment is received by RedSpeed which retains a large percentage—usually 33% or 35%—as well as the processing fee, and remits the remainder to the municipality which allowed it to install its cameras. This amounts to millions-of-dollars a year in unlawful revenue to RedSpeed. The revenue received by the municipalities is only used for law enforcement or public safety purposes (despite the fact that it is the school which must seek and show the need for the automated enforcement); Albany, for example, has used the RedSpeed money to buy $319,733 worth of tasers.

18.    If a class member wants to contest the citation, it must "testify under oath in open court or submit to the court a sworn notarized statement that you were not the operator of the vehicle at the time of the alleged violation." That is, the citation creates a mandatory presumption—without evidence—that the vehicle was driven by the person to whom the vehicle is registered. The amount of evidence required to shift this burden of persuasion is significant, as it requires a notarized affidavit, which must be obtained at some cost, and appearance at the hearing in person or through counsel hired for that purpose.  Notably, even then, under the statute, it is entirely discretionary whether or not this sworn affidavit would be sufficient to rebut the presumption made. The cost and burden of contesting the citations outweigh the cost of the citation themselves and are intended to ensure payment without a meaningful opportunity to be heard. Indeed, notably, the amount of the citation is deliberately set through statute to be less than the normal speeding violation to ensure such compliance.

19.    If a class member does not pay the citation (or successfully contest it) the consequences are significant. RedSpeed may place a lien on the vehicle (which could lead not only to additional costs and burden but also to the repossession of the vehicle by any previous lien holder, such as a financing company). Further, if they do not pay or successfully contest the

citation, a class member is not permitted to renew their vehicle's registration or transfer title (as through sale).

20.    This conduct is broadly violative of Georgia statutory and common law. Section 40-14-18 (which purports to allow RedSpeed's conduct) is unconstitutional and unenforceable as it creates a rebuttable presumption that impermissibly shifts the burden of persuasion to Plaintiffs and putative class members. Further, the system RedSpeed operates unlawfully usurps the role of law enforcement and violates the statutory framework that dictates which governmental agencies and employees, in what manner, may issue fines and citations for traffic violations in at least four ways:

    a.    First, Georgia statutory law only allows law enforcement officers to utilize speed detection devices, including those for photographically recorded images, and to issue citations or penalties. *See, e.g.,* Ga. Code Ann. § 40-14-2(a). RedSpeed's conduct violates this law as it usurps this statutory mandate by operating speed detection devices, making determinations of violations, and issuing citations. Georgia law does not allow the delegation of police powers to third parties, especially as part of an outsourced policing-for-profit scheme.

    b.    Second, Georgia statutory law provides that owners of vehicles may only be "liable for a civil monetary penalty to the governing body of the law enforcement agency." Ga. Code Ann. § 40-14-18(d). RedSpeed's conduct renders Plaintiffs and putative class members liable directly to RedSpeed for a portion of this penalty.

    c.    Third, Georgia statutory law mandates that no speed detection device may be used where payment to the issuer is on a "fee system." *See, e.g.,* Ga. Code Ann. § 40-

14-2(a). The RedSpeed system is just such an incentive-based citation system, whereby the more violations it issues the more revenue it receives.

d.  Fourth, Georgia statutory law only allows an "agent" to send citations, and RedSpeed by its own contractual documents is not the agent of any municipality. *See, e.g.,* Ga. Code Ann. § 40-14-18(b)(2). There is no authority for it to send citations or notices of violation to Plaintiffs and class members or for it to collect payment through such notices.

21.    Finally, the uniform method by which RedSpeed operates the system to create and send citations renders its unreliable and flawed including failures to: to calibrate the system consistently, to notify correctly or operate consistently with notifications as they relate to times of operation, to maintain and allow access to all video footage, to take and share pictures of drivers as well as vehicles, and to ensure that a law enforcement officer is meaningfully reviewing (and has access to) all relevant information necessary to make the required determination of violation.

22.    As a result of the conduct at issue herein, Plaintiffs and putative class members have been denied of property interests and damaged in that they paid money to RedSpeed, and RedSpeed has received money it is not entitled to retain. As set out below, Plaintiffs bring this action to end these practices, recover all funds improperly taken by RedSpeed, prohibit RedSpeed from continuing this conduct in the future, and recover all attorney's fees and punitive damages allowed by law.

23.    Because of the methods, practices, and procedures described above, RedSpeed does not have a lawful right to collect on any of the citations and penalties it assesses, including the citation issued to Plaintiffs. RedSpeed therefore never lawfully possessed any of the fines it collected, including the fine it collected from Plaintiffs.

24.     The money RedSpeed has collected through these citations and fines are maintained in a specific, separate, identifiable fund that Plaintiffs and putative class members seek to have returned.

A. Neither Plaintiff, Nor Any Putative Class Member, Voluntarily Paid Money To RedSpeed.

25.     No putative class member, including Plaintiffs had full knowledge of the relevant facts and Plaintiffs and each putative class member was under an obligation to pay citations and fines to RedSpeed which renders any such payments not "voluntary."

26.     Upon information and belief, RedSpeed has enacted and carried out the unlawful conduct complained of herein through a concerted effort of soliciting municipalities and their employees and elected officials as part of a broader campaign to secure a large portion of the policing-for-profit industry in Georgia. The manner and methods by which it did so, and the full extent of the unlawful conduct that ensued, was hidden from Plaintiffs and putative class members such than none possessed—or could have possessed—the full knowledge necessary for any payment to be deemed "voluntary" under applicable law.

27.     Further, Plaintiffs and each putative class member were under a legal obligation to pay the fees and citations assessed and collected by RedSpeed.  As discussed above, the amount and system to assess these fees renders it overly expensive and difficult to effectively challenge them. Additionally, the consequences for not paying are severe, and can include liens being placed on vehicles and the potential resulting repossession of those vehicles by third party lenders. The legal obligation to pay and enforcement mechanisms carried out by RedSpeed also renders any such payments not "voluntary" under applicable law.

## V.     CLASS ACTION ALLEGATIONS

28.     Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23 and Georgia Code § 9-1-23, and proposes the following classes:

> Payment Class:
> All persons in Georgia who paid a fine or civil penalty to RedSpeed, or from which RedSpeed received any portion of a fine or civil penalty.
>
> Citation Class:
> All persons in Georgia who received a citation by RedSpeed or through the RedSpeed system.

29.     As defined herein, "RedSpeed" means RedSpeed USA Corporation, RedSpeed Georgia LLC, or other related entities.

30.     Excluded from the proposed class are members of the judiciary who preside over this case or related litigation; entities currently in bankruptcy; entities whose obligations have been discharged in bankruptcy; and governmental entities or employees.

31.     Plaintiffs maintain the right to create additional subclasses or classes, if necessary.

32.     Plaintiffs also reserve the right to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

**A.     Existence And Predominance Of Common Questions Of Law And Fact.**

33.     RedSpeed is engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation.  This common course of conduct—implementing a system which violates Federal and Georgia law—affected class members in the exact same manner. The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from RedSpeed's common conduct. Identical Georgia law applies to each class member's claims.

34.     This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include, but are not limited to, the following:

a.     Whether Ga. Code Ann. § 40-14-18(d) is unconstitutional under Georgia

Constitution Art. I, § 1, ¶ I and/or the United States Constitution;

b.    Whether the mandatory rebuttable presumption of liability impermissibly shifts the burden of persuasion to class members;

c.    Whether RedSpeed's conduct violates Ga. Code Ann. § 40-14-2(a);

d.    Whether RedSpeed's conduct violates Ga. Code Ann. § 40-14-18(d);

e.    Whether RedSpeed's conduct violates Ga. Code Ann. § 40-14-18(b)(2);

f.    Whether RedSpeed owns and operates the equipment and systems used to determine and assess violations;

g.    Whether RedSpeed is effectively usurping the mandate that law enforcement officers determine and issue traffic citations;

h.    Whether RedSpeed has been unjustly enriched through its conduct;

i.    Whether RedSpeed's conduct constitutes an unauthorized exercise of ownership over the property of class members; and

j.    Whether RedSpeed should be prohibited from continuing its conduct in the future.

**B.    Numerosity.**

35.    The total number of members of each putative class is so numerous that individual joinder is impracticable. RedSpeed has issued more than 1,000 citations in Georgia to class members.

**C.    Typicality.**

36.    The claims of the named Plaintiffs are typical of the claims of the class. Plaintiff, like other class members, was issued and paid a citation through the RedSpeed system to RedSpeed in Georgia after receiving the form notice of violation. Plaintiffs were subject to, and was harmed by, the exact same common policies and practices which affected all class members.

**D.    Adequacy.**

37.    Plaintiffs will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Each Plaintiff shares the same interests and was harmed by the same conduct as each other class member. Resolution of this case will

inherently vindicate and redress the interests of Plaintiffs equally with class members. Plaintiffs have retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

**E.    Superiority And Manageability.**

38.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is large, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims. The interests of judicial economy favor adjudicating the claims for the Plaintiffs classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using data and records maintained by RedSpeed in electronic form. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

**VI.    CAUSES OF ACTION**

**<u>COUNT I</u>**
**DECLARATORY JUDGMENT**
**(Violation Of Georgia Statutory Law)**

39.    All allegations and paragraphs, excluding the paragraphs for other Counts, are incorporated by reference.

40.    Plaintiffs and each member of the class received a notice of violation and paid, or will be required to pay, a citation issued by RedSpeed or through the RedSpeed system operated in Georgia.

41.    The operations and conduct of RedSpeed in issuing notices of violation and citations in Georgia violates Georgia statutory law, including Georgia Code § 40-14-18(d), Georgia Code § 40-14-2(a), and Georgia Code § 40-14-18(b)(2), as set out in detail above.

42.     Under Georgia Code § 9-4-2, Plaintiffs on behalf of themselves and all members of the class seeks declaratory judgment that the conduct complained of herein is unlawful and violates Georgia statutory law.

43.     Plaintiffs and each member of the class have been directly and proximately harmed by RedSpeed's conduct in that each paid or will berequired to pay fines to RedSpeed. In addition to declaratory judgment, Plaintiffs also seeks damages on behalf of themselves and all members of the class in the amount of these payments under Georgia Code § 9-4-3.

44.     RedSpeed's conduct is continuing and presents the likelihood of further harm to Plaintiffs and members of the putative class. Plaintiffs and members of the putative class have reasonable expectation that the injury they have suffered will continue or will be repeated in the future, in that they live and drive in zones where the unlawful conduct is taking place, as alleged more specifically in the <u>PARTIES</u> section of this Complaint.  In addition to declaratory judgment and damages, Plaintiffs also seek injunctive relief on behalf of themselves and all members of the class prohibiting RedSpeed from continuing its unlawful operations in Georgia and specifically prohibiting RedSpeed from enforcing tickets against them.

<u>**COUNT II**</u>
**DECLARATORY JUDGMENT**
**(Violation Of Due Process)**

45.     All allegations and paragraphs, excluding the paragraphs for other Counts, are incorporated by reference.

46.     Plaintiffs and each member of the class received a notice of violation and paid, or will berequired to pay, a citation issued by RedSpeed or through the RedSpeed system operated in Georgia.

47.     The statute under which RedSpeed purports to have authority to issue such notices and citations, Georgia Code § 40-14-18(d), is unconstitutional under Georgia Constitution Art. I, § 1, ¶ I in that it deprives Plaintiffs and putative class members of their property without due process by creating a rebuttable presumption that impermissibly shifts the burden of persuasion, as set out in detail above.

48.     Under Georgia Code § 9-4-2, Plaintiffs on behalf of themselves and all members of the class seek declaratory judgment that Georgia Code § 40-14-18(d) is unconstitutional.

49.     Plaintiffs on behalf of itself and putative class members have or will provide notice to the Attorney General of Georgia under OCGA § 9–4–7(c) (which does not contemplate pre-suit notification).

50.     In addition to declaratory judgment, Plaintiffs also seek damages on behalf of themselves and all members of the class in the amount of these payments under Georgia Code § 9-4- 3.

51.     The conduct complained of herein is continuing and presents the likelihood of further harm to Plaintiffs and members of the putative class. Plaintiffs and members of the putative class have reasonable expectation that the injury they have suffered will continue or will be repeated in the future, in that they live and drive in zones where the unlawful conduct is taking place, as alleged more specifically in the PARTIES section of this Complaint. In addition to declaratory judgment and damages, Plaintiffs also seek injunctive relief on behalf of themselves and all members of the class prohibiting RedSpeed from continuing its unlawful operations in Georgia and specifically prohibiting RedSpeed from enforcing tickets against them.

**COUNT III**
**UNJUST ENRICHMENT**
**(Money Had and Received)**

52.     All allegations and paragraphs, excluding the paragraphs for other Counts, are incorporated by reference.

53.     To the extent necessary, this count is plead in the alternative. This count is an action in equity.

54.     RedSpeed's contracts with government entities (such as the City of Albany) are void or voidable. Without a valid contract, RedSpeed lacked the statutory authority to provide services to those entities and thus had no right to collect fees from Mr. Leroy and the putative Payment Class members.

55.    Pursuant to those invalid and void agreements, Mr. Leroy paid a citation issued by RedSpeed or through the RedSpeed system operated in Georgia.

56.    Through the conduct set out herein, RedSpeed received money from Mr. Leroy and the putative Payment Class which in equity and justice it should not be permitted to keep. By charging and collecting notices of violations and citations, by suppressing and misrepresenting material facts in such notices (including its role and retention of such money), by violating state statutory and common law, by operating under invalid, void or voidable contracts with government entities, and by engaging in other wrongful and unlawful conduct as set out herein, RedSpeed obtained money which properly belongs to Mr. Leroy and the putative Payment Class. The benefit conferred was non-gratuitous and RedSpeed realized value from this benefit. It would be inequitable for RedSpeed to retain this benefit.

57.    Mr. Leroy and each member of the Payment Class have been directly and proximately harmed by RedSpeed conduct in that they paid money to RedSpeed through notices of violation and citations.

### COUNT IV
### DECLARATORY JUDGMENT
### (Violation of Federal Due Process)

58.    All allegations and paragraphs, excluding the paragraphs for other Counts, are incorporated by reference.

59.    RedSpeed was a state actor when it ticketed Plaintiffs. RedSpeed conspired with the city of Albany, Lee and Dougherty Counties, and other government entities to operate its business and to issue tickets and enforce them. RedSpeed carries a badge of authority of the State and represents it when enforcing laws by issuing tickets. RedSpeed performs a public function that is traditionally the exclusive perogatoive of the State when enforcing laws by issuing tickets. Furthermore, the State has so far insinuated itself into a position of interdependence with RedSpeed that it was a joint participant in the enterprise. RedSpeed assists government entities to assess and collect fees.

60.    Plaintiffs and each member of the class received a notice of violation and paid, or will be required to pay, a citation issued by RedSpeed or through the RedSpeed system operated

in Georgia.

61.     The statute under which RedSpeed purports to have authority to issue such notices and citations, Georgia Code § 40-14-18(d), is unconstitutional under the Due Process Clause of the Fourteenth Amendment of the United States Constitution in that it deprives Plaintiffs and putative class members of their property without due process by creating a rebuttable presumption that impermissibly shifts the burden of persuasion, as set out in detail above.

62.     RedSpeed's actions also violate due process because RedSpeed is a state actor operating as a for-profit law enforcement agency and has an unconstitutional financial incentive in ticketing citizens

63.     Plaintiffs on behalf of themselves and all members of the class seek declaratory judgment that Georgia Code § 40-14-18(d) and RedSpeed's operations are unconstitutional

64.     In addition to declaratory judgment, Plaintiffs also seek damages on behalf of themselves and all members of the class.

65.     The conduct complained of herein is continuing and presents the likelihood of further harm to Plaintiffs and members of the putative class. Plaintiffs and members of the putative class have reasonable expectation that the injury they have suffered will continue or will be repeated in the future, in that they live and drive in zones where the unlawful conduct is taking place, as alleged more specifically in the <u>PARTIES</u> section of this Complaint. In addition to declaratory judgment and damages, Plaintiffs also seek injunctive relief on behalf of themselves and all members of the class prohibiting RedSpeed from continuing its unlawful operations in Georgia and specifically prohibiting RedSpeed from enforcing tickets against them.

## <u>PRAYER FOR RELIEF</u>

66.     Plaintiff, on behalf of themselves and each member of the putative classes, as set out above, seeks damages in the amount of all citations and penalties paid to RedSpeed, declaratory relief, injunctive relief, attorney's fees and punitive damages.

## <u>Trial By Jury</u>

Plaintiff, and the class are entitled to, and demand, a trial by jury.

This the 22 day of January, 2024.

/s/Patrick S. Flynn
Patrick S. Flynn
**PATRICK FLYNN LAW**
Georgia State Bar No. 004765
517 W. Broad Avenue
Albany, Georgia 31701
229.446,4886
pflynn@patrickflynnlaw.com

Oscar M. Price, IV
**PRICE ARMSTRONG, LLC**
1919 Cahaba Road
Birmingham, AL 35223
Phone: 205.208.9588
oscar@pricearmstrong.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the foregoing <u>*Second Amended Class Action Complaint*</u> with the Clerk of Court using the Court's CM/ECF e-filing system which will provide notification of such filing to all persons duly registered therewith to receive filings in the above-styled matter.

This the 22 day of January, 2024.

By: <u>/s/Patrick S. Flynn</u>
Patrick S. Flynn
Georgia Bar No.: 004765